UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
DAN MILLER, et al., : CASE NO. 1:12-CV-1248
:
Plaintiffs, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 32, 35]
CITY OF WICKLIFFE, OHIO, :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE[1/]:

Plaintiffs Dan Miller, Joseph Cirino, Julious Mosley, and their business concerns Suede Nights, LLC, Spot 82, LLC, and Mosley Motel of Cleveland, Inc. sue Defendant City of Wickliffe, Ohio ("Wickliffe") for violating Plaintiffs' Constitutional rights.[2/] Plaintiffs say Wickliffe violated Plaintiffs' rights by passing Wickliffe City Resolution 2009-14[3/] and Ordinance 2009-49[4/].

Plaintiffs Miller, Cirino, Suede Nights and Spot 82 move for partial summary judgment.[5/] With their motion, Plaintiffs argue that 2009-49 is invalid because the ordinance (1) violates the First Amendment to the U.S. Constitution (2) is overbroad, and (3) is vague.

Defendant Wickliffe opposes and cross-moves for summary judgment as to all six Plaintiffs' claims.[6/] Defendant also says that Plaintiffs lack standing under Article III of the U.S. Constitution.[7/]

For the following reasons, the Court **DENIES** Plaintiffs' motion for partial summary

---

[1/]Judge Wells presided over this case until October 2015. On her retirement, this Court took the case under General Order 2015-12. *See* non-document docket entry dated October 6, 2015.
[2/]Doc. 24.
[3/]Doc. 32-3.
[4/]Doc. 32-4.
[5/]Doc. 32. Plaintiffs Mosley and Mosley Motel do not appear on the motion.
[6/]Doc. 35.
[7/]Doc. 25 at 13; Doc. 41.

Case No. 1:12-cv-1248
Gwin, J.

judgment, **GRANTS IN PART** Defendant's motion for summary judgment, **DENIES IN PART** Defendant's motion as moot, and **DISMISSES** all counts of Plaintiffs' first amended complaint.

## I. Background

In considering whether Plaintiffs have standing to challenge the Wickliffe actions, this Court first considers whether Plaintiffs sufficiently allege standing when Plaintiffs' principal gripe is that Wickliffe actions prevented Plaintiffs from opening nightclubs or other venues. The injury problem arises because the Ohio liquor control authorities independently denied Plaintiffs' request for a liquor license. Without that license, Plaintiffs could not open a bar or nightclub.

Plaintiff Mosley Motel of Cleveland is an Ohio corporation with its primary place of business at 28500 Euclid Avenue, Wickliffe, Ohio. Plaintiff Mosley is the primary owner of the Mosley Motel. In May 2009 Plaintiff Miller entered into a five-year lease with the Mosley Motel. Miller planned to operate a nightclub in the lounge area of a building located at 28500 Euclid Avenue.

**Plaintiff Miller's Liquor Permit Application**

In June 2009 Miller applied for a liquor license from the Ohio Department of Commerce, Liquor Control Division ("the Liquor Control Division"). On June 10, 2009, Defendant Wickliffe waived asking the Liquor Control Division for any hearing to oppose Miller's application for a liquor license.[8] However, several local religious organizations objected to Miller's application.[9]

On September 15, 2009, The Liquor Control Division held a hearing at which the religious

---

[8] Doc. 43-1.
[9] Doc. 37-13.

Case No. 1:12-cv-1248
Gwin, J.

organizations voiced their objections to the permit.[10] Members of the Wickliffe City Counsel also attended the hearing.

On September 21, 2009, while Miller's application was still pending, Wickliffe's City Counsel convened an emergency session and passed Resolution 2009-14.[11] That resolution stated that "the issuance of a liquor permit at 28500 Euclid Avenue will be detrimental to and will substantially interfere with the morals, safety and welfare of the residents of the City of Wickliffe."[12]

Defendant Wickliffe's City Counsel then forwarded Resolution 2009-14 to the Liquor Control Division. By letter dated October 30, 2009, the Liquor Control Division denied Miller's liquor license application.[13] The rejection letter notified Plaintiff Miller of his right to appeal the rejection to the Ohio Liquor Control Commission.[14] Miller did not appeal the Liquor Control Division's permit denial.

**Plaintiff Miller's Application for a Temporary Occupancy Permit**

On September 10, 2009, Plaintiff Miller applied for a temporary occupancy permit for 28500 Euclid Avenue in Wickliffe, Ohio. By letter dated September 17, 2009, Wickliffe rejected the application because the building did not have enough paved parking spaces to satisfy zoning

---

[10] *See* Doc. 35-1.

[11] 2009-14 noted Wickliffe's support for several organizations that opposed Miller's application for a liquor license. These organizations were "Telshe Yeshiva Rabbinical College and High School, All Saints Elementary School, Sacred Heart Chapel, Borromeo Seminary, and the Center for Pastoral Leadership" (the "organizations"). 2009-14 also called for delivery of 2009-14 to the Ohio Department of Commerce, Liquor Control Division. Doc. 32-3 at 1.

[12] *Id.*

[13] The Division's grounds for rejection were: 1) Plaintiff Milller's business would "substantially and adversely affect or interfere with the normal, orderly conduct of the affairs of [the organizations]"; 2) given the location of Miller's business, "substantial interference with public decency, sobriety, peace, or good order would result from the issuance of the permit"; and 3) "[the Liquor Control] Division also denies and rejects the new application as authorized or required by law." Doc. 35-1 at 1–2 (citing R.C. §4301.10(A)(2); R.C. §4303.292(B)(1); O.A.C. §4301:1-1-12(B)).

[14] *Id.* at 2.

Case No. 1:12-cv-1248
Gwin, J.

requirments. The letter required Miller to apply for a conditional use permit instead.[15]

### Wickliffe's Nightclub Ordinance

On September 28, 2009, Wickliffe's City Council convened and passed Ordinance 2009-49. That ordinance generally requires a permit to operate a "nightclub" in Wickliffe. Ordinance 2009-49 also prevents a nightclub from opening within 500 feet of several types of organizations, including schools, churches, and other nightclubs.[16]

As of September 28, 2009, Plaintiff Miller did not have a liquor license or occupancy permit for 28500 Euclid Avenue. He also did not apply for a permit to operate a nightclub under 2009-49.

### Plaintiff Cirino

In early 2011, Plaintiff Cirino negotiated with Plaintiff Miller for the use of 28500 Euclid Avenue. Cirino paid Miller $40,000 for an ownership interest in Spot 82, LLC. Miller and Cirino

---

[15] Doc. 37-3.

[16] The challenged portions of 2009-49 read:

**747.02 DEFINITIONS**
(a) 'Nightclub' means a place operated for a profit, which is open to the public and provides the opportunity to engage in social activities such as dancing; the enjoyment of live or prerecorded music; the serving of food and beverages, all of which are provided for a consideration that may be included in a cover charge or included in the price of the food or beverage.
. . .
**747.03 NIGHTCLUB PERMIT REQUIRED**
It is unlawful for any person to own, lease, operate, manage, or maintain a nightclub in the City without first obtaining a nightclub permit from the City as set forth in this chapter.
. . .
**747.09 ACTION ON APPLICATION**
. . .
(b) This application [for a nightclub permit] will be denied if:
. . .
(11) The location of the nightclub is within five hundred feet from the boundaries of a parcel of real estate having situated on it a school, church, library, public park, tavern, bar, adult cabaret, or another nightclub;
. . .
**747.99 PENALTY**
(a) Whoever [operates] a nightclub without first having obtained a permit from the City is guilty of a misdemeanor of the first degree.

Doc. 32-4 at 1–4.

Case No. 1:12-cv-1248
Gwin, J.

wanted to open a billiards hall at 28500 Euclid Avenue as Spot 82, LLC.

On December 1, 2011, Wickliffe gave Cirino a temporary permit to renovate the premises. However, on December 15, 2011, Wickliffe revoked the permit and ordered Plaintiffs to cease and desist operations.[17]

Plaintiffs filed this eight-count lawsuit in May 2012. With their first amended complaint, Plaintiffs allege violations of 42 U.S.C. §§ 1982, 1983, and 2000(a), tortious interference with contract, and tortious interference with business relationships.

**Motions for Summary Judgment**

Plaintiffs Miller, Cirino, Suede Nights, LLC, and Spot 82, LLC move for partial summary judgment. With their motion, Plaintiffs argue that Ordinance 2009-49 violates the First Amendment, is overbroad, and is void for vagueness. They do not seek summary judgment on the remaining claims.

Defendant Wickliffe moves for summary judgment on Plaintiffs' claims. Defendant argues that 1) Plaintiffs' claims are barred by the statute of limitations; 2) Plaintiffs' § 1983 claims fail; 3) Plaintiffs' § 1982 claims fail; 4) Plaintiffs failed to exhaust state administrative remedies before bringing their § 2000a claims; 5) Defendant Wickliffe is immune to Plaintiffs' tort law claims; and 6) 2009-49 is constitutional.

**Supplemental Briefs on the Issue of Standing**

On November 2, 2015, this Court ordered supplemental briefing from both parties on the issue of Article III standing.[18] On November 20, 2015, both parties filed supplemental briefs.

In their briefing on standing, Defendant Wickliffe argues that Plaintiffs lack standing to

---

[17] Doc. 37-5.
[18] Non-document docket entry dated November 2, 2015.

Case No. 1:12-cv-1248
Gwin, J.

challenge Ordinance 2009-49 or to raise any of the claims stemming from Ordinance 2009-49. Defendant says that because Plaintiffs never actually applied for a permit to operate a nightclub under Ordinance 2009-49, Wickliffe never denied anything to Plaintiffs and Plaintiffs therefore have not suffered an "injury in fact."

In response, Plaintiffs argue that the mandatory language of Ordinance 2009-49 makes applying for a permit futile because the application would have been automatically denied. Plaintiffs also argue that they have suffered an injury in fact because Plaintiffs invested their personal and corporate funds into the nightclub and billiards hall projects, only to have those funds lost as a result of adverse regulation and other conduct by Wickliffe.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[19] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[20] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[21] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[22] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[23]

Before considering the merits of a case, a district court must determine that a plaintiff has

---

[19] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[20] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[21] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[22] *Id.* at 586.
[23] *Killion*, 761 F.3d at 580 (internal citation omitted).

-6-

Case No. 1:12-cv-1248
Gwin, J.

standing to bring his or her claims in federal court. The Supreme Court explained the requirements to show standing under Article III[24] at the summary judgment phase:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "addressed by a favorable decision."
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation . . . . In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.[25]

There are several ways to prove these standing requirements. Plaintiffs can show that they have a legally protected interest which is harmed by a particular enactment. Plaintiffs can show that an enactment violates the First Amendment by improperly restricting protected activity. Alternatively, Plaintiffs can show that a statute violates their Due Process rights by being impermissibly vague or overbroad.

### III. Discussion

**Injury in Fact**

Plaintiffs cannot show that they suffered an injury in fact. Defendant Wickliffe passed

---

[24] U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States . . . .").

[25] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

Case No. 1:12-cv-1248
Gwin, J.

Ordinance 2009-49 before Plaintiff Miller opened his nightclub or obtained a liquor license.

Rather than applying for a permit, Plaintiffs filed this lawsuit. Plaintiffs have not tried to obtain a permit to operate as a nightclub under Ordinance 2009-49 and no application has been denied. Plaintiffs were not operating a nightclub at the time Wickliffe passed Ordinance 2009-49.

To the extent that Plaintiffs have a legally protected interest in operating a business and seeking profits, Plaintiffs cannot show that defendant Wickliffe intruded on their interest by passing 2009-49. Plaintiffs needed to at least apply for a permit to operate a nightclub before suing for being improperly denied the right to operate a nightclub.[26]

With their supplemental brief, Plaintiffs argue that they have standing because they would have automatically been denied a permit based on the geographical restrictions in Ordinance 2009-49. This argument loses. Though Plaintiffs make some showing that Wickliffe would likely have denied Plaintiffs' application for a nightclub permit, they do not make a strong showing.[27] Instead of giving Wickliffe a chance to consider their application for a nightclub permit, Plaintiffs brought this lawsuit.

If Plaintiffs intend to sue Defendant Wickliffe for improperly denying them a permit to open a nightclub, then Plaintiffs needed to allow Wickliffe the opportunity to either grant or deny the permit application. If, on the other hand, Plaintiffs intend to sue to challenge Ordinance 2009-49 itself, then Plaintiffs cannot show more than a "generalized grievance" regarding Ordinance 2009-

---

[26]*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972); *Hockett v. Adm'r of Veterans Affairs*, 385 F. Supp. 1106, 1113 (N.D. Ohio 1974).

[27]*See* Doc. 32-1; Doc. 37-32; Doc. 37-34. The Google Maps printouts and Wickliffe Zoning Map do not prove that Wickliffe would have automatically denied the permit. The printouts do not show the actual boundaries of other business, but rather list them as pin points. They do not demonstrate that Wickliffe would have had no discretion in measuring the boundaries or distance between organizations listed in 2009-49 and 28500 Euclid Avenue.

Case No. 1:12-cv-1248
Gwin, J.

49, which is not sufficient to confer standing.[28]

Plaintiffs also say that because they invested their money in 28500 Euclid Avenue, that the sudden loss of their business venture gives them standing to sue. This argument loses. While Plaintiffs have legally protected interests in pursuing fruitful employment and investments, they do not have a legally protected interest in operating any kind of business they like despite state and local regulations. Cities are not automatically susceptible to lawsuits by any business owner who has invested his or her money prior to the passage of a challenged ordinance. Plaintiffs must show that they have standing in addition to losses, which they have not done in this case.[29]

**Causation and Redressability**

Plaintiffs do not show redressability and they lack standing for this independent reason. Standing requires that a favorable outcome would address the harms that Plaintiffs allege. Declaring Ordinance 2009-49 unconstitutional would remove one obstacle to Plaintiffs operating a nightclub at 28500 Euclid Avenue. However, Plaintiffs still would not be able to operate a nightclub at 28500 Euclid Avenue for several reasons that are independent of Ordinance 2009-49. Therefore, a favorable outcome striking down Ordinance 2009-49 would not address the harms that Plaintiffs allege.

The Liquor Control Division rejected Miller's application for a liquor license. This rejection is an independent barrier to opening a nightclub at 28500 Euclid Avenue. The Liquor Control Division is not a party to this lawsuit and Miller did not timely appeal the Liquor Control Division's liquor license application denial. As a result, there is no redressability because no remedy in this

---

[28]/*See* [Hollingsworth v. Perry, __ U.S. __, 133 S. Ct. 2652, 2662 (2013)](Hollingsworth v. Perry, __ U.S. __, 133 S. Ct. 2652, 2662 (2013)).

[29]/Plaintiffs do not argue that Mosley and Mosley Motel have standing to sue in this case; their supplemental brief only addresses standing for Miller, Cirino, Suede Nights and Spot 82. Mosley and Mosley Motel lack standing to sue in this case for the same reasons that the other Plaintiffs lack standing.

Case No. 1:12-cv-1248
Gwin, J.

case could alleviate the harm caused by the denial.

The Liquor Control Division was authorized to deny Plaintiff Miller's liquor license application application under [R.C. §4301.10(A)(2)](R.C. §4301.10(A)(2)) and [O.A.C. §4301:1-1-12(B)](O.A.C. §4301:1-1-12(B)). Having failed to appeal the Liquor Control Division's denial, no ruling on Wickliffe's ordinance would gant the permit.

Plaintiffs say the Liquor Control Division improperly denied Plaintiff Miller's application because it heard testimony from members of Wickliffe's City Council at the September 15, 2009 meeting and because it considered Wickliffe Resolution 2009-14. This argument proves little. The Liquor Control Board made an independent decision on the permit application, Plaintiff failed to appeal that decision and any decision on Wickliffe's ordinance will not give the liquor permit that Plaintiffs need.

Plaintiffs never got a license to sell liquor at 28400 Euclid Avenue. As a result Plaintiffs cannot show that they would have been able to open a nightclub at that location, either before or after Wickliffe passed Ordinance 2009-49. Therefore, striking down Ordinance 2009-49 would not give relief. Plaintiffs lack standing because Plaintiffs cannot show that their alleged harms can be addressed by a favorable outcome in this case.

Second, neither Miller nor Cirino had occupancy permits for 28500 Euclid Avenue. Plaintiffs have made no showing that they were entitled to any of those permits or that the permits were revoked for unlawful reasons. Without these permits, Plaintiffs would likely not be able to operate a nightclub at 28500 Euclid Avenue, regardless of the existence of 2009-49. Plaintiffs cannot meet the redressability requirement for Article III standing.

Case No. 1:12-cv-1248
Gwin, J.

### First Amendment Challenge to 2009-49

Plaintiffs say that they have standing to challenge Ordinance 2009-49 because that ordinance impermissibly "limits the right to assembly" under the First and Fourteenth Amendments to the U.S. Constitution.[30] This argument loses. 2009-49 does not implicate the First Amendment.[31]

Ordinance 2009-49 created a permit requirement for nightclubs in Wickliffe. Ordinance 2009-49 defines "nightclub" as a business

> operated for a profit, which is open to the public and provides the opportunity to engage in social activities such as dancing; the enjoyment of live or prerecorded music; the serving of food and beverages, all of which are provided for a consideration that may be included in a cover charge or included in the price of the food or beverage.[32]

Plaintiffs claim that Ordinance 2009-49 "regulates all for profit businesses that are open to the pubic that provide the opportunity to engage in social activities."[33] This is not the case. Ordinance 2009-49 does not apply to bars or restaurants that charge just for food or drink. The distinction between bars and nightclubs in Wickliffe is borne out in practice. Plaintiffs admit that the bars, taverns, and restaurants operating in Wickliffe in 2009 were not subject to enforcement under Ordinance 2009-49. They also admit that the only open nightclub in Wickliffe, Evolution Lounge, was subject to enforcement under Ordinance 2009-49.[34]

Ordinance 2009-49 regulates permits for businesses, not expression or assembly.[35] Using

---

[30] Doc. 32 at 8.
[31] *See United States v. Blaszak*, 349 F.3d 881, 888 (6th Cir. 2003) (holding that statute prohibiting payment for testimony does not implicate the First Amendment).
[32] Doc. 32-4 at 1.
[33] Doc. 32 at 8 (internal quotations omitted).
[34] Doc. 37-27.
[35] *See WCT Corp. v. City of Pasadena*, No. B161040, 2004 WL 119879, at *3 (Cal. Ct. App. Jan. 27, 2004). Even if 2009-49 regulated protected expression or assembly, it would not violate the First Amendment. Cities like Wickliffe are entitled to enact content-neutral zoning ordinances which are reasonable time, place, and manner
(continued...)

-11-

Case No. 1:12-cv-1248
Gwin, J.

illustrative examples of activities that count as "expression" under the First Amendment—for example, playing music[36]—does not by itself mean that the ordinance invokes First Amendment protections.[37]

Ordinance 2009-49 may have some impact on protected First Amendment activity, such as potential nightclub customers' ability to listen to music.[38] However, almost any regulation can be seen to have some small effect on protected activity.[39] At most, requiring businesses to get a permit to operate a nightclub has at most an attenuated effect on this protected activity. Attenuated effects on protected speech are not sufficient to implicate the First Amendment.[40] As a result, Plaintiffs do not have standing to challenge 2009-49 on First Amendment grounds.

---

[35](...continued) restrictions on speech. *See Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 280 (6th Cir. 2014).
    Plaintiffs submitted a zoning map and Google Maps printouts as evidence that 2009-49 prevents opening a nightclub in Wickliffe. Doc. 32-1; Doc. 37-32; Doc. 37-34. Plaintiffs have not proven this assertion. The printouts only show a small portion of Wickliffe. The printouts, if admissible at all, do not show that the 500 foot limitation in 2009-49 prevents nightclubs anywhere in the Wickliffe or even in a substantial part of Wickliffe. Plaintiffs do not address other areas outside of one stretch of Euclid Avenue where a nightclub could open. Plaintiffs' evidence is not sufficient to make out a First Amendment violation.

[36]*Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

[37]Even if 2009-49 implicated the First Amendment, it would likely pass the intermediate scrutiny applied to content-neutral time place and manner regulations. Ordinance 2009-49 is content neutral because it is not directed to the content of any expression that may be affected by Ordinance 2009-49. *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Rather, Ordinance 2009-49 serves as an oversight mechanism for nightclubs by requiring nightclubs to get permits before operating, and serves to maintain a 500-foot buffer from several types of organizations. These interests are unrelated to the content of Plaintiffs' or others' speech.
    In order to survive intermediate scrutiny, Ordinance 2009-49 must serve a substantial government interest unrelated to the suppression of expression, be sufficiently narrowly tailored to the interest, and leave open alternate avenues of communication. *Ward*, 491 U.S. at 791. Ordinance 2009-49 would likely survive intermediate scrutiny under *Ward*.
    The parties correctly say that Ordinance 2009-49 should not be analyzed under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. at 50 (city ordinance prohibiting adult theaters within 1000 feet of residential neighborhoods, churches, parks and schools, but leaving approximately 5 per cent of the area of the city open to adult theaters held to be a constitutional time, place, and manner restriction on adult speech). Ordinance 2009-49 is not directed towards adult speech. *See R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 414–15 (7th Cir. 2004).

[38]*Ward*, 491 U.S. at 790; *Willis v. Town Of Marshall, N.C.*, 426 F.3d 251, 260 (4th Cir. 2005).

[39]*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705–06 (1986).

[40]*Willis*, 426 F.3d at 260 (4th Cir. 2005) (citing *Arcara*, 478 U.S. at 706 (1986)).

Case No. 1:12-cv-1248
Gwin, J.

**Vagueness and Overbreadth**

Plaintiffs also say that they have standing to challenge Ordinance 2009-49 on Due Process grounds. They argue that Ordinance 2009-49 is vague and overbroad and therefore violates their Due Process rights. This argument loses.

"The overbreadth doctrine constitutes an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection."[41] In addressing an overbreadth challenge, a court first has to "determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail."[42]

As explained above, Ordinance 2009-49 does not reach a substantial amount of protected expression or other protected conduct because Ordinance 2009-49 does not implicate the First Amendment. Ordinance 2009-49 does not impermissibly "chill" protected speech.[43] It simply requires that a business get a permit before it can operate a nightclub in Wickliffe and lists several conditions that will defeat the application.

"A statute is unconstitutionally vague and violates the Due Process Clause if it fails to define the offense with sufficient definiteness such that ordinary people can understand the prohibited conduct or to establish standards to permit law enforcement personnel to enforce the law in a

---

[41] *Leonardson v. City of E. Lansing*, 896 F.2d 190, 195 (6th Cir. 1990) (citing *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

[42] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).

[43] *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 845 (1997). Ordinance 2009-49 does not raise the same chilling effect concerns at play in *Reno*. *Reno* involved the Communications Decency Act of 1996 ("CDA"), which prohibited "knowing" transmission of "obscene or indecent" messages to minors. The CDA involved protected expressive activity and was vaguely worded in violation of the First Amendment. Ordinance 2009-49 is not vague like the CDA, but even if it was, individuals can get around the prohibitions in Ordinance 2009-49 by simply applying for a permit to operate a nightclub. This would alleviate any uncertainty as to whether an individual was about to operate a nightclub, as opposed to a bar or tavern.

Case No. 1:12-cv-1248
Gwin, J.

non-arbitrary, non-discriminatory manner."[44] In addressing a vagueness challenge to a statute that does not involve constitutionally protected conduct, a court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."[45]

2009-49 is not vague as applied to Plaintiffs in two respects. First, Plaintiffs admit that they intended to operate a nightclub within the meaning of 2009-49. This forecloses the argument that Plaintiffs were unsure of 2009-49's application to Plaintiffs. Second, there is no vagueness in 2009-49's requirement that Plaintiffs apply for a permit before operating a nightclub. 2009-49 is not a general prohibition on nightclubs in Wickliffe, but rather a permit requirement. This requirement is not vague. The Court **DENIES** Plaintiffs' motion for partial summary judgment.

Plaintiffs have not suffered an injury in fact as the result of Wickliffe passing 2009-49. Plaintiffs have not shown that 2009-49 implicates the First Amendment or that 2009-49 is vague or overbroad. Because counts one through six of Plaintiffs' first amended complaint involve challenges to 2009-49 and claims stemming from that Ordinance, the Court **DISMISSES** Counts 1 to 6 of Plaintiffs' complaint for lack of standing.[46]

**Statutory Immunity**

Counts 7 and 8 of Plaintiffs' first amended complaint allege tortious interference with

---

[44] *United States v. Blaszak*, 349 F.3d 881, 888 (6th Cir. 2003).

[45] *Vill. of Hoffman Estates*, 455 U.S. at 495.

[46] To the extent that Count 3 of Plaintiffs' first amended complaint alleges violations of 42 U.S.C. § 2000a due to Wickliffe's participation in the Ohio Liquor Control Division's hearing on Plaintiff Miller's liquor license application, these claims are alternatively barred due to Plaintiffs' failure to pursue available administrative remedies. *See Halton v. Great Clips, Inc.*, 94 F. Supp. 2d 856, 861 (N.D. Ohio 2000).

Case No. 1:12-cv-1248
Gwin, J.

contract and tortious interference with business relationships. Plaintiffs' complaint does not allege specific acts on the part of Wickliffe. Rather, Plaintiffs vaguely claim that "Wickliffe, though the actions undertaken in a coordinated effort by its employees and City Council, have acted to prevent performance of the contract by Suede [Nights, LLC] and the collection of monies due and owing under the lease by MosleyMotel."[47]

To the extent that these allegations involve 2009-49, Plaintiffs do not have standing to bring these claims, as explained above. However, to the extent that Counts 7 and 8 allege tortious interference due to Wickliffe's sudden revocation of Spot 82's temporary occupancy permit in December 2011, Plaintiffs have standing to bring these claims.

Even if Plaintiffs have standing to bring tortious interference claims, Wickliffe is immune from suit under Ohio Revised Code § 2744.02(A)(1). That section gives immunity to political subdivisions—including cities like Wickliffe—from liability in civil actions where the subdivision's governmental or proprietary functions cause property loss.

Counts 7 and 8 can be seen to allege property loss due to Wickliffe's revocation of Spot 82's temporary occupancy permit. However, granting and revoking temporary occupancy permits is one of Wickliffe's governmental functions.[48] None of the statutory exceptions to immunity apply in this case. Therefore, Wickliffe is immune from Plaintiffs' tortious interference claims. The Court **GRANTS** Defendant Wickliffe's motion for summary judgment on the issue of statutory immunity as to Counts 7 and 8.

---

[47] Doc. 24 at 24.

[48] *See Columbus v. Sanders*, 2012-Ohio-1514, 2012 WL 1139145, ¶ 31 (Ohio App. Ct. 2012); *City of Greenfield v. Schluep*, 2006-Ohio-531, 2006 WL 290471 ¶¶ 13–14 (Ohio App. Ct. 2006).

-15-

Case No. 1:12-cv-1248
Gwin, J.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for partial summary judgment, **GRANTS IN PART** Defendant's motion for summary judgment, **DENIES IN PART** Defendant's motion as moot, and **DISMISSES** all counts of Plaintiffs' first amended complaint.

IT IS SO ORDERED.

Dated: December 21, 2015                    s/        *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE